**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| CITY OF DETROIT, a Municipal Corporation Organized and Existing Under the Laws of the State of Michigan,<br><br>  Plaintiff,<br><br>  v.<br><br>SYNCORA GUARANTEE INC.,<br><br>and<br><br>U.S. BANK, N.A.,<br><br>and<br><br>MGM GRAND DETROIT, LLC,<br><br>and<br><br>DETROIT ENTERTAINMENT, LLC d/b/a MOTORCITY CASINO HOTEL,<br><br>and<br><br>GREEKTOWN CASINO, LLC,<br><br>  Defendants. | Case No.: _____ |

**NOTICE OF REMOVAL TO UNITED STATES DISTRICT COURT**

Pursuant to 28 U.S.C. § 1441, Defendant Syncora Guarantee Inc. ("Syncora") hereby notices the removal to this Court of Cause 13-008858-CZ from the Circuit Court for the County of Wayne. In support of this notice, Syncora states:

1

## STATEMENT OF GROUNDS FOR REMOVAL

1. As set forth below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. *First*, removal of this action is proper because diversity of citizenship exists due to the fact that the Casino Defendants have been fraudulently joined and are, at best, nominal defendants who can be disregarded for the purposes of establishing this Court's jurisdiction. *Second*, nominal defendant U.S. Bank is not considered for purposes of establishing jurisdiction and is not required to join in this Notice of Removal. *Third,* the amount in controversy exceeds $75,000, satisfying the requirements of 28 U.S.C. § 1332.

## BACKGROUND

2. On July 5, 2013 plaintiff City of Detroit (the "City") filed an action against Syncora, U.S. Bank, N.A. ("U.S. Bank"), and three casinos: MGM Grand Detroit, LLC, Detroit Entertainment, LLC d/b/a Motorcity Casino Hotel, and Greektown Casino, LLC, (together, the "Casino Defendants") in the Circuit Court for the County of Wayne. The gravamen of the tortious conduct allegedly at issue revolves around defendant Syncora's correspondence with custodian U.S. Bank. (Compl., Ex. A, ¶ 31) That correspondence, which is not alleged to contain any untrue statements (and does not), principally sought to confirm statements made by U.S. Bank's representatives that no funds would be released from a custodial account it was charged with administering. (*Id.*) Syncora's letter also offered truthful observations regarding certain events that had come to pass that constituted events of defaults under contracts to which Syncora is either a party or third party beneficiary. (*Id.*) According to the City's Verified Complaint, Syncora's truthful statements regarding the operation of agreements with which it is intimately connected constitute egregious misconduct subjecting Syncora to punitive damages. (Compl., Ex. A, pp 21-22)

3.  Plaintiff's four-count Verified Complaint contains claims for interference with contractual relations (Count I), interference with advantageous relations (Count II), declaratory judgment (Count III), and injunctive relief (Count IV). (A copy of the plaintiff's Verified Complaint is attached as Exhibit A.) The plaintiff also sought and was granted an *Ex Parte* Temporary Restraining Order (a) enjoining U.S. Bank as custodian from refusing to make payments to the plaintiff from the General Receipts Subaccount and (b) enjoining Syncora from "taking any action to limit the City's access to casino revenues or funds in the General Receipts Subaccount." (A copy of the Ex Parte Temporary Restraining Order is attached as Exhibit B.) Despite the fact that Syncora and the City were attempting to engage in negotiations to resolve their dispute, the City surreptitiously obtained the *Ex Parte* Temporary Restraining Order without notice to Syncora the day after the July 4th holiday.

4.  According to the Verified Complaint, in 2005-2006 the City, through two Service Corporations, issued Certificates of Participation to fund over $1.4 Billion of the City's pension obligations. (Compl., Ex. A, ¶ 12.) The Service Corporations also entered into interest rate swaps with certain counterparties to fix effectively the interest rates on the variable rate portions of the Certificates of Participation. (*Id.*, ¶ 14.) The swaps are in part insured by Syncora, as are a portion of the Certificates of Participation. (*Id.*, ¶ 13.)

5.  In 2009, the Service Corporations faced a large lump sum termination payment under the swaps resulting from credit ratings downgrades. (Compl., Ex. A, ¶ 21.) This in turn meant that the City would have to make a sizeable corresponding payment to the Service Corporations. To avoid termination, the City and the Service Corporations instead entered into a Collateral Agreement that provided that certain casino revenues the City normally received as taxes would be paid to an account held by U.S. Bank (as custodian) as collateral for the City's

3

payment obligations to the Service Corporations.  (*Id.*)  To ensure that the casino revenues went first into the collateral account, the City issued Irrevocable Instructions to the Casino Defendants instructing them to transfer their gaming revenue tax payments to the collateral account held by U.S. Bank.  (The Irrevocable Instructions make up part of the Collateral Agreement which is attached as Exhibit C.)

6. On June 15, 2013, the City failed to make a $40 million service payment it owed to the Service Corporations, who in turn defaulted on their payments under the Certificates of Participation.  (Compl., Ex. A, ¶ 26.)  This missed payment caused an event of default under the Swap Agreements, which *automatically* triggers the "trapping" of cash under section 5.4(a)(iii) of the Collateral Agreement.  (Ex. C, § 5.4(a)(iii).  Between June 17, 2013 and June 26, 2013, Syncora and its representatives corresponded with U.S. Bank as Custodian and with Kevyn Orr, Emergency Manager for the City of Detroit, regarding the Collateral Agreement's automatic "cash-trapping" requirements.  (Compl., Ex. A, ¶ 31-33.)  These communications allegedly form the basis for the plaintiff's Verified Complaint.

7. Syncora is a New York corporation with its headquarters in New York, New York.  Syncora is a citizen of New York.  (Compl., Ex. A, ¶ 2.)

8. Plaintiff is a citizen of Michigan.  (Compl., Ex. A, ¶ 1.)

9. Nominal defendant U.S. Bank National Association is a subsidiary of U.S. Bancorp, and has as its principal place of business in Minneapolis, Minnesota.  U.S. Bank is incorporated in the state of Minnesota.  Its Amended and Restated Articles of Association designate Cincinnati, Ohio, as the location of its main office.

10. The Casino Defendants, who were fraudulently joined and are, at best, nominal defendants, include:

      a.    MGM Grand Detroit, LLC is a Delaware limited liability company.

      b.    Detroit Entertainment, LLC, d/b/a Motorcity Casino Hotel, is a Michigan limited liability company.

      c.    Greektown Casino, LLC is a Michigan limited liability company.

11.    None of the Casino Defendants is party to any of the agreements described in the Verified Complaint, nor were they senders or recipients of any of the correspondence of which the City now complains.

12.    Pursuant to 28 U.S.C. § 1446(b), this action was properly removed within 30 days of notice of the filing of the Verified Complaint.

## REMOVAL IS PROPER UNDER 28 U.S.C. § 1441

13.    Removal is proper under 28 U.S.C. § 1441 when a federal court has original jurisdiction over a civil action.  As expressed more fully below, this Court has original jurisdiction over this matter pursuant 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

    **A.**    **The Casino Defendants Have Been Fraudulently Joined and Should Be Disregarded For Purposes of Establishing Jurisdiction Under § 1332.**

14.    The Casino Defendants have been fraudulently joined because plaintiff has not and cannot assert a claim against them.  In the Sixth Circuit, a defendant is fraudulently joined when "there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).  Defendants are not required to show that there is "absolutely" no basis for recovery; instead, "a defendant must show that the plaintiff has no reasonable basis for a claim against the non-diverse defendant in state court based on the alleged facts." *Graphic Res. Grp., Inc. v. Honeybaked Ham Co.*, 51 F. Supp. 2d 822, 825 (E.D. Mich. 1999) (finding fraudulent joinder where there could be no claim against a Michigan corporation).

5

15. In the Verified Complaint's four separate counts, all allegations are against Syncora or the "Defendants" collectively, and not against any of the Casino Defendants specifically. Within the four separate counts, only "Count IV – Injunctive Relief" requests any relief against "Defendants" collectively. "Injunctive Relief" is not a stand-alone cause of action in Michigan. *Terlecki v. Stewart*, 278 Mich.App. 644, 663 (Mich. Ct. App. 2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action.") A claim for injunctive relief must be premised on an underlying cause of action. The Verified Complaint does not allege any wrongdoing on the part of the Casino Defendants and provides no basis for an injunction to be issued against the Casino Defendants. The Casino Defendants' only role on the face of the Verified Complaint is to be enjoined "in the event this Court is unable to fashion appropriate relief against Syncora and U.S. Bank." (Compl., Ex. A, p 21.) The only injunctive relief sought against the Casino Defendants is thus sought in the alternative — and even then, the Verified Complaint states no legal basis for this alternative relief.

16. Indeed, the Casino Defendants are operating under Irrevocable Instructions given by the City that require them, pursuant to city ordinance, to make payments to the General Receipts Subaccount. (Compl., Ex. A, ¶ 21.) They have not violated any of the terms of the Irrevocable Instructions and Plaintiff has not asserted any claims against them. Plaintiff cannot, as a matter of law, state a claim or recover against the Casino Defendants on any of the Counts alleged in its Verified Complaint.

17. First, Plaintiff cannot state a claim for interference with contractual relations or interference with advantageous relations (Counts I and II) against the Casino Defendants. Counts I and II include no allegations as to the Casino Defendants and request no relief from the Casino Defendants. Tortious interference with contractual relations requires alleging that there

6

was an "intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." *Feldman v. Green*, 360 N.W.2d 881, 886 (1984).  Tortious interference with an advantageous business relationship requires "the existence of a valid business relation . . . or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted." *Bonelli v. Volkswagen of Am., Inc.*, 421 N.W.2d 213, 219–220 (1988) (internal citations and quotations omitted).

18. Plaintiff identifies no per se wrongful act by the Casino Defendants, and does not specify any action at all by the Casino Defendants that allegedly constitutes interference.  But in order to state a claim for tortious interference of contractual or advantageous relations, plaintiffs are required to identify either a per se wrongful act or "demonstrate, with specificity, affirmative acts that corroborate an improper motive of the interference." *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan*, 552 N.W.2d 919, 925 (1996).  Because Plaintiff has not alleged that the Casino Defendants have acted to interfere with any relationship or contract of the City's, Plaintiff has not (and cannot) state a claim against the Casino Defendants under Counts I and II of the Verified Complaint.

20. Plaintiff also has not and cannot assert a claim for declaratory judgment (Count III) against the Casino Defendants.  Michigan Court Rule 2.605(A)(1) provides that the rights or other legal relations of an interested party may be declared by a Michigan court.  The grant of a declaratory judgment is discretionary with the trial court but is only granted where there is an actual controversy.  *Skiera v. Nat'l Indem. Co.*, 418 N.W.2d 424, 426 (1987) citing *Shavers v.*

*Attorney General*, 267 N.W.2d 72 (1978).  Declaratory relief is a "procedural device by which substantive claims are vindicated."  *Yaldo v. Deutsche Bank Nat. Trust Co.*, 10-CV-11185, 2010 WL 4940024, *6 (E.D. Mich. Nov. 30, 2010).

21. Under Michigan law, in order to articulate a claim for declaratory relief, the plaintiff must be able to show a substantive underlying claim.  *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 863 (2008) ("[C]laims for declaratory relief must necessarily be based on an underlying substantive claim to satisfy the requirement that an actual controversy exist.") (internal citations and quotations omitted).  Here, the Verified Complaint does not allege an underlying cause of action against the Casino Defendants and the City cannot show an actual controversy exists that would support the City's claim for declaratory relief.

22. Federal Circuit Courts, including the Sixth Circuit Court of Appeals, have found fraudulent joinder where there is no cause of action for declaratory relief, such as where a defendant is a third party that is not involved in the dispute at issue.  In *Jerome-Duncan*, a Michigan automobile dealership ("JDI") brought breach of contract and declaratory judgment claims against an online service with which it had agreements.  *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 908 (6th Cir. 1999).  It also brought breach of contract and declaratory judgment claims against another non-diverse dealership that had replaced JDI and was being serviced by the online provider.  *Id.*  The diverse defendant sought removal to federal court and alleged that the non-diverse car dealership defendant was fraudulently joined in JDI's amended complaint.

23. The district court agreed and denied the plaintiff's motion to remand. The Sixth Circuit Court of Appeals affirmed the denial, reasoning that JDI had no possible cause of action against the non-diverse defendant because the non-diverse defendant was a "third party that is

8

not involved in JDI's contract dispute with [the online service]." *Jerome-Duncan, Inc.* 176 F.3d 904, 908.  The fact that JDI's request for preliminary injunction would have potentially enjoined the non-diverse car dealership defendant did not constitute adequate involvement in the underlying dispute to merit granting a motion to remand.  *Id.*

24.  Similarly, in *Smith v. BCE, Inc.*, a contractor brought a state court action against several telecommunications companies, alleging fraudulent inducement to amend certain agreements.  225 F. App'x 212, 213 (5th Cir. 2007).  Additionally, the plaintiff alleged breach of contract and sought a declaratory judgment against a non-diverse defendant.  Finding that the plaintiff could not allege a breach of contract claim because he had released the non-diverse defendant from performance, the court found that the plaintiff consequently could not seek declaratory judgment against the non-diverse defendant.  *Id.* at 216.  Because no claim remained against the non-diverse defendant, the court found that diversity jurisdiction was preserved and affirmed the district court's denial of the motion to remand to state court.  *Id.*

25.  In its Verified Complaint the City makes no specific claim for declaratory relief against the Casino Defendants, nor does it allege that the Casino Defendants are interested parties in the City's dispute with Syncora.  (Compl., Ex. A, ¶¶ 69-73)  Plaintiff cannot as a matter of law state a claim for declaratory relief against any of the Casino Defendants because they are not in fact interested parties; the plaintiff does not allege that they are parties to the Collateral Agreement, nor does the plaintiff even allege that the Casino Defendants are third party beneficiaries to the Collateral Agreement.  Because the plaintiff does not and cannot point to any substantive claim against the Casino Defendants, there is no "actual controversy" and thus no claim for declaratory judgment.  *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 908 (6th Cir. 1999) (affirming denial of motion to remand and finding fraudulent joinder

where there could be no declaratory relief because the defendant was a third party not involved in any underlying dispute at issue).

26. Moreover, the Casino Defendants are indifferent to the outcome of this matter because, irrespective of who prevails, they will continue to pay the gaming revenues into the General Receipts Subaccount pursuant to the City's Irrevocable Instructions.

27. Finally, the plaintiff cannot state a claim against the Casino Defendants for injunctive relief (Count IV). The Casino Defendants are only expressly mentioned on three occasions in the Verified Complaint. First, they are mentioned as parties. (Compl., Ex. A, ¶¶ 4-6.) Second, they are mentioned in establishment of venue. (Compl., Ex. A, ¶ 8.). Third, they are mentioned as an alternative source of relief in the prayers for relief:

> (g) Entering preliminary, temporary, and permanent injunctive relief against the Casino Defendants, *in the event this Court is unable to fashion appropriate relief against Syncora* and U.S. Bank, enjoining the Casino Defendants to make payment of Casino Revenues directly to the City rather than to the General Receipts Subaccount, or establishing another mechanism for payment mutually acceptable to the City and the Counterparties.

(Compl., Ex. A, p 21.) (emphasis added). They are not mentioned specifically in any of the four actual Counts in the Verified Complaint.

28. Because the Casino Defendants are not involved in a dispute with the plaintiff giving rise to substantive claims of liability against them, injunctive relief is not available or proper against the Casino Defendants. To secure preliminary injunctive relief, the plaintiff must show that (1) there is likelihood that the party seeking the injunction will prevail on the merits, (2) there is a danger that the party seeking the injunction will suffer irreparable harm if the injunction is not issued, (3) there is a risk that the party seeking the injunction would be harmed more by the absence of an injunction than the opposing party would be by the granting of the

relief, and (4) there would be harm to the public interest if the injunction is not issued. *Michigan AFSCME Council 25 v. Woodhaven-Brownstown Sch. Dist.*, 809 N.W.2d 444, 448 (2011).

29. In *Ghiaciuc v Bank of America*, Judge Patrick J. Duggan held that injunctive relief is not an independent cause of action and dismissed the plaintiff's cause of action for injunctive relief because the plaintiff had not established an entitlement to relief based on the other counts in his complaint. Case No. 2:11-cv-13274, 2012 U.S. Dist. LEXIS 133024, *10–11 (E.D. Mich. September 18, 2012). Similarly, in this case the plaintiff has not alleged an entitlement to relief against the Casino Defendants in any of its first three counts, and therefore cannot prevail against the Casino Defendants on its claim for injunctive relief.

30. The plaintiff alleges that the Casino Defendants should be enjoined in the event that relief against Syncora is denied. However, the plaintiff's claim for alternative injunctive relief against the Casino Defendants expressly contravenes its own Irrevocable Instructions to the Casino Defendants. The Casino Defendants have made payments consistent with these instructions. The plaintiff's "alternative" request for injunctive relief is thus in direct conflict with the express terms of the Collateral Agreement and Irrevocable Instructions which provide as follows:

- The Collateral Agreement provides in Section 5.1(b) that "The City shall not take any action to redirect the payment of the Revenues contrary to the Irrevocable Instructions."

- The Irrevocable Instructions provide that:

    o Section 5.1: All Payments to be paid to the City shall be paid to U.S. Bank National Association (the Custodian) for the benefit of the City by wire transfer in immediately available funds at the office of the Custodian in New York, New York.

    o Section 6: Payments made to the Custodian pursuant to these Instructions shall have the same force and effect as if made to the City, and [the Casino] ***shall have no further liability*** with respect to such Payments if made as herein provided.

(emphasis added)

- Section 11: These Instructions are binding on you, your successors, if any, and any assigns.

31. The City has not alleged that the Casino Defendants have failed to pay; to the contrary, the revenues the plaintiff seeks to access exist as a result of the Casino Defendants' payment pursuant to the Irrevocable Instructions. Nor has the City alleged that the Irrevocable Instructions are invalid. To the contrary, the City's Verified Complaint makes clear that the validity of the Collateral Agreement giving rise to the Irrevocable Instructions is not in dispute and is *not* at issue. (*See*, Compl., Ex. A, ¶ 21 fn. 1.) Yet, the City attempts to bring an action for injunctive relief, as an "alternative" remedy to the injunctive relief it really wants, against entities that have not even allegedly violated their agreements with the City in any way.

32. Courts have found fraudulent joinder where there is no colorable claim against a named defendant. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904 (6th Cir. 1999) (finding fraudulent joinder where no claim could be articulated against a defendant that was not a party to the contract dispute); *see also Jones v. Kroger Co.*, 05-72513, 2005 WL 2649257 (E.D. Mich. Oct. 17, 2005) (finding fraudulent joinder where there was no colorable claim under Michigan law); *Yanakeff v. Signature XV*, 822 F. Supp. 1264, 1266 (E.D. Mich. 1993) (finding fraudulent joinder where "Michigan law would impose no liability" against the named defendant).

33. Because there is no reasonable basis for the plaintiff's claims against the Casino Defendants, and because the plaintiff cannot assert claims under any of the four counts in its Verified Complaint against the Casino Defendants, the Casino Defendants are fraudulently joined and should be ignored for the purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332.

### B. The Casino Defendants Are, At Best, Nominal Defendants That Are Not Parties In Interest To The Dispute.

34. In the alternative, the Casino Defendants are, at best, nominal defendants to the instant dispute. Their only tangential connection to this dispute is as the party providing the payments that represent the (formerly) trapped cash at issue; they have no interest in the suit because, pursuant to the Irrevocable Instructions, they will continue making identical payments no matter the outcome of the instant dispute.

35. As such, the Casino Defendants are classic nominal parties. *Maiden v. N. Am. Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (stating a nominal party "is one who has no interest in the result of the suit and need not have been made a party thereto."). The citizenship of nominal or formal parties can be disregarded for purposes of establishing diversity jurisdiction. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (stating that, to satisfy the requirements of § 1332(a)(1), "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"); *see also Yanakeff v. Signature XV*, 822 F. Supp. 1264, 1266 (E.D. Mich. 1993) (disregarding nominal defendant against whom there was no claim under Michigan law for purposes of establishing diversity jurisdiction); *Spizizen v. Nat'l City Corp.*, 11-2646, 2013 WL 656255, *2 (6th Cir. Feb. 25, 2013) (affirming finding of fraudulent joinder where "there was no colorable state-law claim.").

36. Because the Casino Defendants are not parties in interest to this dispute, but are, at best, merely nominal defendants, their citizenship should be disregarded for purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332.

### C. Defendant U.S. Bank Is A Nominal Defendant And Is Not Required To Join In Removal.

37. In its Verified Complaint, the plaintiff names U.S. Bank as a "nominal defendant." (Compl., Ex. A, ¶ 3.) This is presumably because U.S. Bank serves merely as the

custodian of the funds in the General Receipts Subaccount, which are the casino revenues paid to that account pursuant to Irrevocable Instructions.

38. In the Sixth Circuit, nominal parties are not required to join in or consent to removal. The federal removal statute, 28 U.S.C. § 1446, "requires that all served defendants, *except nominal parties*, join in or consent to the removal within 30 days after the first defendant is served with process." *Vines v. City of Detroit,* CIV. 97-CV-71540, 1997 WL 433508, *1 (E.D. Mich. July 24, 1997) *quoting Shadley v. Miller*, 733 F. Supp. 54, 55 (E.D. Mich. 1990) (emphasis added).

39. A nominal party "is one who has no interest in the result of the suit and need not have been made a party thereto." *Maiden v. N. Am. Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004). Custodians of funds at issue in a matter have been treated as nominal parties in the Sixth Circuit in the context of establishing diversity jurisdiction. *See, e.g., U.S. S.E.C. v. Harden*, 1:05-CV-354, 2005 WL 2649857, *3 (W.D. Mich. Oct. 17, 2005) ("[B]oth subject matter jurisdiction over the nominal party and personal jurisdiction over the nominal party were unnecessary provided that there was subject matter and personal jurisdiction over the real parties and the nominal party held property as a mere custodian for the real parties in interest.")

40. Thus, because U.S. Bank is a nominal defendant, it is not considered for purposes of diversity jurisdiction and need not join in the instant Notice of Removal.

    **D.**     **Amount In Controversy Is Satisfied.**

41. In order to have original jurisdiction on the basis of diversity of citizenship, the amount in controversy must be in excess of $75,000. 28 U.S.C. § 1332. The plaintiff's Verified Complaint states that the amount in controversy exceeds $25,000, which is the jurisdictional minimum for the lower court. (Compl., Ex. A, ¶ 7.). However, the amount that would have resided in the General Receipts Subaccount absent the Temporary Restraining Order (which

allowed the dissipation of those funds) exceeded $15 million on a monthly basis. (Compl., Ex. A, ¶¶ 43-44)  Thus, the amount in controversy exceeds $75,000 and satisfies the requirements of 28 U.S.C. § 1332.

## **CONCLUSION**

42. For the reasons set forth above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and removal of the action to this Court is proper pursuant to 28 U.S.C. § 1441(a).

43. Copies of all process, pleadings and orders served upon Syncora are filed herewith pursuant to 28 U.S.C. § 1446(a) and attached to this Notice. The Verified Complaint is attached as Exhibit A. The Ex Parte Temporary Restraining Order is attached as Exhibit B. The Motion for an Ex Parte Restraining Order and an Order to Show Cause Why a Preliminary Injunction Should Not Issue is attached as Exhibit D. The Affidavit of Kevyn D. Orr is attached as Exhibit E. The Motion to Admit Gregory Shumaker, Thomas F. Cullen, and Geoffrey S. Stewart to Practice Pro Hac Vice is attached as Exhibit F.

44. Pursuant to 28 U.S.C. § 1446(d), Syncora states that it shall promptly file a copy of this Notice with the Clerk of the Circuit Court for Wayne County, Michigan.

Dated: July 11, 2013                                                                 Respectfully submitted,

By: /s/Gerard V. Mantese

| | |
|---|---|
| Stephen C. Hackney | Gerard V. Mantese (P34424) |
| Ryan Blaine Bennett | Ian M. Williamson (P65056) |
| William E. Arnault | Brendan H. Frey (P70893) |
| Lally A. Gartel | Mantese Honigman Rossman and |
| KIRKLAND & ELLIS LLP | Williamson, P.C. |
| 300 North LaSalle | 1361 East Big Beaver Road |
| Chicago, Illinois 60654 | Troy, Michigan 48083 |
| Telephone: (312) 862-2000 | Phone: 248-457-9200 |
| Facsimile: (312) 862-2200 | Fax: 248-457-9201 |
| ATTORNEYS FOR DEFENDANT | ATTORNEYS FOR DEFENDANT |
| SYNCORA GUARANTEE INC. | SYNCORA GUARANTEE INC. |